UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH MAWAKA, Individually and On Behalf of All Others Similarly Situated, Plaintiff, vs. NESTLE PURINA PET CARE CO, WAGGIN' TRAIN, LLC, WAL-MART STORES, INC., SAM'S CLUB, INC., AND DOES 1-10, Defendant. | No. CLASS ACTION DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Elizabeth Mawaka brings this class action complaint against Nestle Purina Pet Care Company, Waggin' Train, LLC, Wal-Mart Stores, Inc., and Sam's Club, Inc. to seek redress for herself and other individuals similarly situated and injured by the sale of contaminated chicken jerky pet food throughout the United States.

### NATURE OF THE CASE

1. Nestle Purina Pet Care Company ("Nestle Purina") is a company engaged in the business of manufacturing, producing marketing, distributing, advertising and selling dog food and dog treats and it has been in the business of doing so since 1957. It has also spent millions of dollars in advertising and promoting its pet food products. It holds itself out to the public as a manufacturer of safe, wholesome, nutritious and high-quality pet food.

1

2. As of February of 2012 over 500 consumers who purchased chicken jerky dog treats made complaints to the FDA concerning the safety of Waggin' Train Chicken Jerky pet food treats.

3. These chicken jerky treats, when ingested by an animal, cause it to suffer from seizures, vomiting, diarrhea, incontinence, excessive thirst, neurological problems including an awkward tilt of the pet's head, loss of balance, pain, and ultimately renal problems, respiratory problems and death.

4. Nestle Purina's actions in selling the contaminated food and failing to issue a recall and continuing to market and sell the chicken jerky treats are reckless and in breach of its duties and warranties to its customers.

5. Those actions were a proximate cause of injury and death of currently untold numbers of pets, including plaintiff Elizabeth Mawaka's two Boston Terriers, as more fully described below.

6. On behalf of a nationwide class, Elizabeth Mawaka seeks redress for that misconduct.

**PARTIES**

7. Plaintiff Elizabeth Mawaka is a citizen of Connecticut, residing in Hartford, , CT.

8. Defendant Nestle Purina is a Missouri corporation, with its principal place of business at Checkerboard Square, St. Louis, Missouri. It does business in the state of Connecticut and sells its pet products throughout the state.

9. Defendant Wal-Mart Sores, Inc and its wholly owned subsidiary Sam's Club, Inc.

are Arkansas corporations with their principal place of business in Bentonville, AR. It does business throughout the United States and throughout Connecticut selling pet food products including the Waggin' Train Chicken Jerky treats.

10. Does 1 through 10 are listed and upon information and belief, there are other culpable defendants who were involved in the production and distribution of said contaminated pet food products. Plaintiff will seek leave to amend when these other entities are made known.

## JURISDICTION

11. The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332 (a) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Nestle Purina, Waggin' Train and Sam's Club is a citizen; (b) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332 (d)(4)-(5) applies to the instant action.

## VENUE

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The Defendants transact business in this District, and many of the acts constituting the violations of law alleged herein occurred in this District.

## FACTS

13. Defendants Waggin' Train and Nestle Purina hold themselves out to consumers and the general public as manufacturers of safe, nutritious, and high-quality dog food.

14. These defendants, Waggin Train and Nestle Purina make numerous express warranties about the quality of their food and their manufacturing facilities.

15. For example, Nestle Purina represents that its chicken jerky product is "wholseome", "nutritious and great tasting" and that the purchaser should "feel confident that you are giving your dog a wholesome treat that is both healthy and delicious".

16. Nestle Purina intended for pet owners to believe that the statements made in its packaging were true and that its pet food was of first-rate quality.

17. Based on hundreds of complaints to the FDA, it had issues warnings, as recently as November 18, 2011, about dog illnesses related to consuming chicken jerky dog treats which were made in China.

18. In spite of the representation on the packaging, the chicken jerky product distributed and sold by Nestle Purina were not wholesome, were not nutritious and were not healthy for the pets but instead were harmful, dangerous and fatal for pets. The packaging did not warn of any danger from feeding its contents to dogs.

19. Waggin' Train and Nestle Purina have marketed their products and continued to distribute their products without determining whether the products are in fact safe for the purposes intended and without determining whether or not they will have a detrimental or fatal affect on dogs.

20. Waggin' Train and Nestle Purina marketed the chicken jerky treats without determining the safety of the product.

**FACTS RELATING TO THE NAMED PLAINTIFF**

21. From approximately September of 2010 Mawaka began buying packages of Waggin' Train Chicken Jerky Treats from Wal-Mart Stores, Inc. and its wholly owned

4

subsidiary, Sam's Club. She purchased these for her then 11 year old dog, Max, as well as her then 6½ year old dog, Toby.

22. Both of these Boston Terriers consumed the treats following that date.

23. Max began having symptoms soon after ingesting these chicken jerky treats produced by Waggin' Train and Nestle Purina. His symptoms began with apparent fatigue and lethargy as well as the dog falling over as if he had vertigo. Max would also hold his head down as if he could not pick it up. His other symptoms included constant excessive thirst, excessive drinking of water, vomiting, and urination.

24. Max continued to have these symptoms and had seizures as well until he had to be finally be euthanized on or about May 18, 2011.

25. Prior to that date, Mawaka expended several hundred dollars in veterinary bills.

26. Meanwhile, Max had been a family pet since 1999.

27. The other Boston Terrier owned by Mawaka, Toby, continued to consume the chicken jerky product produced by Waggin' Train and Nestle Purina. Toby's symptoms began as involuntary twitching and quivering the dog's lip. In January of 2012 Toby showed signed of dizziness, and lethargy.

28. Similar to Max, Toby would not hold his head up and had excessive thirst and also seizures whereby he would urinate. He also began falling over at times and ultimately succumbed to this sickness caused by the chicken jerky treats and had to be euthanized on or about May 10, 2012.

29. The loss of both Max and Toby has been devastating to Mawaka and her entire family.

5

## CLASS ALLEGATIONS

30. Mawaka brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased chicken jerky pet food in the United States sold and distributed by Waggin' Train and Nestle Purina.

31. Upon information and belief, the Waggin' Train Chicken Jerky treats were produced by JOC Greatwall Corporation, Ltd., of Nanjing, China.

32. Upon information and belief, there are over 100,000 members of the Class such that joinder of members is impracticable.

33. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

    (a)    Did Waggin' Train and Nestle Purina act negligently in failing to prevent contamination of its pet food?

    (b)    Did Waggin' Train and Nestle Purina act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

    (c)    Did Waggin' Train and Nestle Purina breach express and/or implied warranties relating to the sale of its pet food?

    (d)    Did Sam's Club, Inc. act negligently in failing to remove this product from its shelves after being alerted of the FDA warnings?

34. Mawaka will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the Class, and she has retained counsel competent and

experienced in class action litigation.

35. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the lass in impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

### COUNT I

### (Breach of Warranties)

36. Plaintiff incorporates by reference all the foregoing allegations.

37. Waggin' Train and Nestle Purina has breached express warranties to Plaintiff and violated the Uniform Commercial Code.

38. Waggin' Train and Nestle Purina has breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

39. Waggin Train and Nestle Purina has breached the implied warranty of merchantability.

40. As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorney's fees and costs; and

6. Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

41. Plaintiff incorporates by references all of the foregoing allegations.

42. Waggin' Trail and Nestle Purina owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

43. Waggin' Train and Nestle Purina breached this duty by failing to exercise care in the production, distribution, and sale of the contaminated dangerous pet food described herein.

44. Waggin' Train and Nestle Purina breached this duty by failing timely and effectively to warn plaintiff and the class of dangers of its chicken jerky treats even after it had actual knowledge of the fact though hundreds of complaints to the FDA and it was aware of the resulting risks.

45. As a proximate cause thereof, plaintiff and the class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

8

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorney's fees and costs; and

6. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

June 14, 2012.

By:_____
Bruce E. Newman, Of counsel
BROWN, PAINDIRIS & SCOTT, LLP
747 Stafford Avenue
Bristol, CT 06010
Tel: (860) 583-5200
Fax: (860) 589-5780
Federal Bar No.: 12301